UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

DENNIS HODGE,                    :        2005 MAY 31  P 1: 17
        Petitioner,

                                          U.S. DISTRICT COURT
                                          BRIDGEPORT CONN

v.                               :        3:00CV1881 SRU

MARK STRANGE,
        Respondent.              :        May 27, 2001

## NOTICE OF APPEAL

1. Pursuant to Fed. R. of App. Proc. 4 (a) (1), the petitioner, Dennis Hodge, hereby

gives notice and appeals to the United States Court of Appeals for the Second Circuit from

the judgment dismissing the petitioner's petition for a writ of habeas corpus entered by the

Honorable Stefan R. Underhill, United States District Judge, following his April 29, 2005

Ruling on Petition for Writ of Habeas Corpus.

2. The judgment was entered on May 3, 1995.

                        Respectfully submitted,
                        THE PETITIONER, DENNIS HODGE

                        By
                        Mark Rademacher, His Attorney
                        Assistant Public Defender
                        Office Chief Public Defender
                        Legal Services Unit
                        2911 Dixwell Ave.
                        Hamden, CT 06518
                        (203) 864-6150
                        fax (203) 865-6157
                        Fed. Bar. No. ct05481

Date: May 27, 2005

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this 27th day of May 2005,

postage prepaid to:

Attorney James A. Killen
Supervisory Assistant State's Attorney
Chief State's Attorney's Office
300 Corporate Place
Rocky Hill, CT 06067
(860) 258-5887
fax (860) 258-5968
federal bar no. ct02058

Mark Rademacher

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

# FILED

2005 MAY -3  P 2: 42

U.S. DISTRICT COURT
BRIDGEPORT, CONN

DENNIS HODGE

v                                    3:00CV1881 (SRU)

MARK STRANGE

### JUDGMENT

This matter came on before the Honorable Stefan R. Underhill, United States District

Judge, as a result of petitioner's petition for writ of habeas corpus. After reviewing the papers

submitted in connection with the petition, the Court entered a ruling on May 2, 2005, denying the

petition.

Therefore, it is ORDERED and ADJUDGED that the petition for writ of habeas corpus is

denied  and the case is closed.

Dated at Bridgeport, Connecticut, this 3rd of May, 2005.

KEVIN F. ROWE, Clerk

By _____
Deputy Clerk

Entered on Docket ___6/4/05___

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DENNIS HODGE,                          :
    Petitioner,                    :
                                   :
                                   :    CIVIL ACTION NO.
    v.                             :    3:00cv1881 (SRU)
                                   :
MARK STRANGE,                          :
    Respondent.                    :
                                   :

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Dennis Hodge, currently imprisoned by the State of Connecticut, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hodge argues that the state convictions under which he is held are based on verdicts rendered by a jury seated in violation of the Fourteenth Amendment's Equal Protection Clause as elucidated by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986). According to Hodge, the trial court incorrectly determined that the prosecutor's exercise of six peremptory challenges was not motivated by racial discrimination. Specifically, Hodge contends that (a) the trial court's application of *Batson* was both contrary to, and an unreasonable application of, clearly established federal law and (b) the record evidence demonstrates that the prosecutor's challenges were racially motivated. I conclude that (a) the trial court correctly interpreted and applied federal law and (b) there is not clear and convincing evidence of any error in the trial court's factual determinations. Accordingly, the petition is denied.

### Background

On January 6, 1995, a jury found Hodge, a black male, guilty of one count of murder and one count of manslaughter for the deaths of Lawrence Biller and Bruce Horowitz, two white males. At trial, Hodge had admitted to shooting both men, but had argued the affirmative defenses of mental disease or defect and extreme emotional distress. Other specifics of the

charged criminal conduct, which are not relevant to this petition, are summarized in *State v. Hodge*, 248 Conn. 207, 210-14 (1999).

The jury that heard Hodge's case was selected over thirty-eight days, during which approximately 400 venirepersons were sworn and 72 were examined. Each side was given thirty-one peremptory challenges. The state used twenty-four of its challenges, six of which the defendant argued were motivated by discriminatory intent. The trial court rejected the defendant's arguments and excused the venirepersons. The jury ultimately selected consisted of twelve jurors and three alternates. Of those fifteen jurors, four were black and two Hispanic.

After sentencing, Hodge appealed, among other things, the trial court's finding that the six challenges to which he objected were not motivated by discriminatory intent. The Connecticut Appellate Court and the Connecticut Supreme Court both affirmed the trial court's decision. The United States Supreme Court denied certiorari. On October 21, 2000, Hodge filed the present application for writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his conviction violated *Batson*'s interpretation of the Fourteenth Amendment.

## Discussion

## I.    AEDPA's Standards

Because it was filed in 2000, Hodge's petition is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In theory, analysis of a section 2254 habeas petition under AEDPA has three steps:[1]

---

[1] I say "in theory" because, in fact, AEDPA does not mandate a particular methodology. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) ("AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)--whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law."). In particular, it will often be practical for a

First, the district court must ascertain whether it has jurisdiction, i.e., whether the petitioner: (a) is in custody pursuant to the judgment of a state court, (b) claims that his custody violates the Constitution, laws, or treaties of the United States, and (c) has exhausted his state administrative remedies. 28 U.S.C. § 2254(a)-(c).

Second, the court must determine whether there was a violation of the Constitution, laws or treaties of the United States. When making this decision "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner can rebut that presumption only by "clear and convincing evidence." *Id.* In some situations the petitioner may be able to meet that burden by introducing, at a hearing, evidence not presented to the state court. If, however, the failure to develop a record at the state court level is the petitioner's fault, a hearing may only be granted in very limited circumstances. 28 U.S.C. § 2254(e)(2).

Third, even if the district court finds a violation, it must still consider whether it is permitted to grant relief. Specifically, even if there is a violation, a district court may not grant relief on:

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

court to skip the second step of the analysis. *See Kruelski v. Connecticut Superior Court For Judicial Dist. of Danbury*, 316 F.3d 103, 107 (2d Cir. 2003).

28 U.S.C. § 2254(d).

The distinction between the second and third steps of the analysis is subtle. At the second step, i.e., when determining whether a violation has occurred, the district court is performing a review of the underlying facts of the petitioner's claim. The district court reviews legal issues *de novo* using the law as it exists at the time the district court is making its decision, and the district court reviews factual findings to see if there is clear and convincing evidence of any error. At the third step, i.e., when determining whether relief is authorized, the question is not whether the petitioner's rights have been violated, but whether the district court is permitted to grant relief from the state court's decision.[2] Here the district court must ask whether the state court's decision is either (a) the result of a legal analysis that was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court at the time of the state court decision or (b) based on a factual determination that is unreasonable in light of the evidence presented to the State court at the time it made its decision.[3]

In other words, under AEDPA, a federal court has fairly broad jurisdiction to determine whether a petitioner's rights have been violated, subject only to section 2254(e)(1)'s requirement

---

[2] It is often more practical for a court to skip directly to the question of relief, when that question admits of an easier resolution than the question of whether a violation occurred, or when the interpretation of law that the second step requires would result in needless dicta. *See Kruelski*, 316 F.3d at 108 ("[I]n many cases governed by the AEDPA, it is appropriate for federal courts first to determine the correct interpretation of Supreme Court precedent. But we decline to hold that federal courts are *required* to do so. Such a statement is more useful and hence more appropriate in some circumstances than in others.").

[3] Although at step two the petitioner must demonstrate the error in a factual determination by clear and convincing evidence, at step three the petitioner is not required to demonstrate the *unreasonableness* of the factual determination by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

that deference be given to state court fact finding and section 2254(e)(2)'s limitation on when an evidentiary hearing may be held. On the other hand, AEDPA severely limits those circumstances under which a district court, even in the presence of a violation, may disturb the decision of a state court.[4] In other words, AEDPA requires federal courts to respect state court decisions, even those that violate constitutional rights, unless those decisions contradict established Supreme Court precedent or are based on unreasonable fact finding.

## II.    AEDPA's Application to Hodge's Claim

Before proceeding to a detailed analysis, I will summarize how the analysis outlined above applies in Hodge's case.

First, there is no dispute that I have jurisdiction. Hodge is in custody pursuant to a state conviction, he is claiming an Equal Protection violation, and he has exhausted all available state court remedies.

Second, as I explain in more detail below, I conclude that the trial correctly understood and applied federal law, and after considering the entire existing record, I conclude that there is not clear and convincing evidence that the trial court's factual conclusions were incorrect.[5] Accordingly, I conclude that Hodge has not established a violation of his constitutional rights.

Third, because I conclude that (a) the trial court's decision was in accordance with federal law and (b) there is not clear and convincing evidence that the trial court made an erroneous

---

[4] This limitation only applies if there is actually a state court decision, i.e., if the "petitioner's federal claim has been adjudicated on the merits by the state court." *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

[5] Hodge does not seek to supplement the record through a hearing. If he did, he would have difficulty showing that one is permitted, given that any inadequacy in the record appears to be a result of his own decisions at the trial court level. *See* 28 U.S.C. § 2254(e)(2).

factual finding, I do not need to decide (a) whether its decision was contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court or (b) whether the trial court's decision was based on unreasonable determination of the facts in light of the evidence presented to it.

### III.    Equal Protection Violation

Hodge's claim that the trial court violated his Equal Protection rights under the Fourteenth Amendment has two components. First, he argues that as a legal matter the trial court did not apply the standard dictated by *Batson*. Second, he argues that as a factual matter the trial court erred in concluding the prosecutor did not act with a discriminatory motive.

### A.    The Legal Standard

In *Batson*, the Supreme Court laid out a three-step inquiry that trial courts are to conduct in order to determine whether a peremptory challenge is being exercised on the basis of race. First, the objecting party must establish a prima facie case by showing there are circumstances that give rise to an inference that the peremptory challenge was exercised on account of race. Second, the striking party must offer a race-neutral reason for the strike, though the reason need not be persuasive. Third, the court must then determine whether the objecting party has met its burden of demonstrating that the challenge in question was motivated by purposeful discrimination. *Batson*, 476 U.S. at 96-98 (setting out three-step test). The moving party need not demonstrate that race was the sole motivation for the strike, only that it was a substantial part of the motivation. *Howard v. Senkowski*, 986 F.2d 24, 30 (2d Cir. 1993).

The trial court's decision on the first step involves a mixed question of law and fact. *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002). The determination whether the non-

objecting partying has given a race-neutral explanation is a question of law. *Hernandez v. New York*, 500 U.S. 352, 359 (1991). Finally, the ultimate determination whether the strike was motivated by purposeful discrimination is a question of fact. *Bryant v. Speckard*, 131 F.3d 1076, 1077 (2d Cir. 1997).

Connecticut has dispensed with the requirement that the objecting party must establish a prima facie case. *State v. Holloway*, 209 Conn. 636, 646 & n.4 (1989). Simply objecting to a peremptory challenge on *Batson* grounds suffices, in a Connecticut trial, to put the burden on the party exercising the challenge to offer a race-neutral reason. Accordingly, the trial court in Hodge's case never made a determination regarding the sufficiency of a prima facie case, and that issue is not, therefore, before this court.

Hodge does not deny that the prosecutor offered race-neutral explanations for each challenge sufficient to pass the second step of the *Batson* inquiry. Consequently, that issue is also not before this court.

Hodge's claim is that, at the third step, the trial court ended its analysis once it found that any one of the prosecutor's explanations was not pretextual and therefore failed to consider the possibility that one of the other stated reasons was pretextual. In other words, Hodge claims that the trial court required him to demonstrate that race was the *sole* factor in the prosecutor's peremptory challenges, rather than merely a *motivating* factor. In support of his claim, Hodge argues that (a) the trial court should be presumed to have followed Connecticut law, which, according to Hodge, was out of sync with *Batson* and (b) the court's statements at jury selection indicate it applied the wrong standard.

-7-

1.    *Standard Dictated by the Connecticut Supreme Court*

Hodge argues that Connecticut law, at the time of his jury selection, required the trial court to permit a peremptory challenge so long as the prosecution could give one non-pretextual reason for exercising the challenge. The argument is not persuasive.

First, the Connecticut Supreme Court has consistently held that racial discrimination may not motivate the exercise of a peremptory challenge. *See Gonzalez, State v. Gonzalez*, 206 Conn. 391, 395 (1998) ("The defendant carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination."); *State v. Smith*, 222 Conn. 1, 13 (1992) ("we conclude that the state did not inject racial discrimination into the voir dire process"); *State v. Hinton*, 227 Conn. 301, 323 (1993) ("The trial court then has the duty to determine if the defendant has established purposeful discrimination.").

Second, although there is some language in Connecticut Supreme Court cases that on first glance appears to support Hodge's claim, a closer inspection reveals that, at most, the Court was setting out a method of *appellate* review. Connecticut appellate courts review trial courts' findings regarding the presence or absence of discriminatory intent under a clearly erroneous standard. *Hinton*, 227 Conn. at 324. Under that standard of review, the higher courts would, at times, decline to review all the proffered reasons for a challenge, concluding that, if some of the reasons for the trial court's decision were valid, the decision could not have been clear error. Consequently, in *Gonzalez*, the Court said "Because we conclude that either of these reasons was a valid basis for challenging Kupfer, we do not consider the other reasons advanced by the state," 206 Conn. at 405, and, in *Smith*, the Court said "Because we have concluded that the state's

-8-

concern about Lawrence's arrest record was a neutral ground for excusing him from the jury,
which was adequately supported by the record, we need not address this other claim," 222 Conn.
at 14 n.8. There is, however, no language in either of these opinions – or any Connecticut State
Supreme Court opinion – that suggests that *trial* courts should follow the *Gonzalez* or *Smith*
methodology.[6]

In his reply brief, Hodge makes a slightly different argument. He argues that, even if the
Connecticut Supreme Court never announced an incorrect standard, there is some indication that
trial courts were mistakenly applying the standard of appellate review to their initial
determinations at jury selection. Apparently the Connecticut Supreme Court shared this concern,
as evidenced by the following statement made when Hodge's case was on direct review:

> To clarify any possible ambiguity regarding the proper role of the *trial court*
> in resolving *Batson* claims, we emphasize that, in evaluating such a claim, the
> trial court must consider all of the proffered reasons together in determining
> whether, as a factual matter, the party exercising the peremptory challenge
> was motivated, in whole or in party, by impermissible discriminatory
> considerations.

*Hodge*, 240 Conn. at 224 (emphasis in original). Nevertheless, to the extent it existed, that
ambiguity is not relevant in Hodge's case because, as I explain in the next section, there is no
indication that the trial judge who presided over Hodge's case misunderstood the Supreme Court
of Connecticut.

---

[6] Moreover, it is not entirely clear from the Supreme Court's decisions in *Gonzalez* and
*Smith* that the Court was declining to review the prosecutor's other reasons to see if those reasons
were pretextual, i.e., the third *Batson* step. It appears possible that all the Court intended to hold
was that only one race-neutral reason was needed to shift the ultimate burden back to the
defendant, i.e., the second *Batson* step. *See Smith* 222 Conn. at 14 ("We agree with courts in
other jurisdictions that this concern *constitutes a neutral ground* . . . .") (emphasis supplied);
*Gonzalez*, 206 Conn. at 405 ("[W]e conclude that either of these reasons was *a valid basis* . . . .")
(emphasis supplied).

2.  *Standard Applied by the Judge in Hodge's Case*

The record is clear that the judge did not, as Hodge claims, find that the prosecutor was not *solely* motivated by race; he found the prosecutor was not *at all* motivated by race. This is seen by what the judge actually said with respect to each venireperson.

> <u>Venireperson C.W.</u>: "I don't know whether a finding is necessary on my part in connection with such a claim, but if a finding is necessary, I would make a determination from the record that lies before us in connection with the voir dire of this particular individual, coupled with the explanation by the State's Attorney as to the reason why he claims that his determination was race neutral, I would conclude that I don't find any discriminatory attempt [sic] on the part of the prosecutor's explanation or conduct, and if that's the case, I guess I have to make the determination that his exercise of the use of one of his challenges is race neutral." (A. 328.)[7]

> <u>Venireperson J.G.</u>: "Well, the court from the voir dire and the record finds that the expressed reasons by the state for excusing this particular venireman do not appear to be insufficient or protectoral [sic]. And it seems to me that the state has given a neutral explanation insofar as race is concerned and would be entitled to use a preemptory [sic] challenge to excuse the juror for the reasons set forth." (A. 408.)

> <u>Venireperson I.M.</u>: "So I think the State has given a neutral, clean and reasonable [sic] specific explanation relating to the exercise of the challenge, which is not grounded on racial basis [sic]. In other words, that the reasons were sufficient and not pretextural [sic]." (A. 100.)

> <u>Venireperson M.F.</u>: "the Court concludes that there appear [sic] to be nothing inherent in the – Mr. Darington's explanation to indicate a discriminatory intent and so the Court would conclude on the basis of that that the exercise of the challenge following the explanation is sufficient and the Court cannot conclude that the reasons given by the State in explanation of the exercise of the challenge was insufficient or pretextual." (A. 253.)

> <u>Venireperson G.D.</u>: "All right, the Court is satisfied that the use of the peremptory challenge here was not racially motivated and that the reasons advanced by the State are sufficient in the Court's judgment and not

---

[7] All citations to the record are citations to the Appendix filed with the Connecticut Supreme Court, which was submitted along with Hodge's petition.

pretextual [sic].  (A. 49.)

<u>Venireperson B.A.</u>: "And the Court finds that the reasons given by the state
for exercising of this preemptory [sic] challenge is not insufficient or
protectual [sic], so the motion to disqualify the exercise of the challenge is
denied." (A. 156.)

Though the judge's language was not always perfectly explicit or precise, in every case he either

made a finding that the prosecutor did not have a discriminatory intent or a finding that the

reasons given by the prosecutor were not pretextual.  *See Galarza v. Keane*, 252 F.3d 630, 640

n.10 (2001) (*Batson* does not require "a talismanic recitation of specific words" by the trial

court).

        In those cases where the judge made an explicit finding of lack of discriminatory intent,

there can be no question he applied the right standard.  In those cases where the judge made a

finding that the reasons were not pretextual, there is theoretically the possibility that he applied

the wrong standard, because it is possible that none of the prosecutor's race-neutral reasons was

pretextual, and yet he was also motivated by other non-race-neutral reasons.  In context,

however, it is clear that the judge's language did not betray any legal misunderstanding.  The

reason the judge addressed his finding to the question of pretext is because that was all that

Hodge argued.  Hodge did not argue then (and does not argue now) that the prosecutor was

motivated both by legitimate and non-legitimate reasons; he argued simply that the prosecutor's

*only* reasons were discriminatory, i.e., that *all* his proffered reasons were pretextual.

Accordingly, when the judge found that none of the reasons was pretextual, he was, as a practical

matter, making a finding that the only motivations for the prosecutor's challenge were his stated,

race-neutral reasons.

-11-

B.    Factual Findings

Even if the trial court applied the correct legal standard, Hodge argues that its factual findings that the prosecutor's challenges were not motivated by discriminatory intent were erroneous. As explained above, AEDPA requires Hodge to demonstrate any such error by clear and convincing evidence.[8]  28 U.S.C. § 2254(e)(1). Even before AEDPA's passage, the United States Supreme Court had pointed out that, because a trial court's determination whether a challenge was exercised for a discriminatory reason depends on the judge's evaluation of the attorney's credibility and the judge's observation of the venirepersons, "a reviewing court ordinarily gives those findings great deference." *Hernandez v. New York*, 500 U.S. 352, 364 (1991).

1.    *What Evidence Should Be Considered*

Before turning to the evidence in the record, there is a threshold question of how much of the record I should review. When reviewing the trial court's determination, the Connecticut Supreme Court declined to consider certain evidence in the record because that evidence had not been presented to the trial judge as part of Hodge's *Batson* claim. Specifically, with respect to three venirepersons, Hodge argued to the trial judge that the prosecutor's stated race-neutral reasons were pretextual based solely on the answers those venirepersons had given in voir dire. On appeal, however, Hodge asked the Supreme Court to consider the argument that white

---

[8] Hodge argues that I am not required to give deference to the trial court's factual findings. He argues that, because the trial court applied the wrong legal standard, it only made a finding that one of the prosecutor's reasons was not pretextual and not a finding that none of the reasons was pretextual. Accordingly, concludes Hodge, the existence of a discriminatory intent is not "a determination of a factual issue made by a State court," and is therefore not entitled to deference. Because I conclude that the trial court did apply the correct legal standard and did find that none of the prosecutor's reasons was pretextual, that argument is without merit.

venirepersons with similar characteristics were not challenged by the prosecution. The Court

declined to hear those arguments, stating:

> Because a disparate treatment claim raises factual questions that must be
> decided by the trial court, the defendant's failure to raise the claim in the trial
> court is fatal to his claim on appeal. Accordingly, in determining the
> propriety of the trial court's findings on the defendant's *Batson* claims, we do
> not consider the defendant's disparate treatment claim in those instances in
> which the defendant failed to raise that claim in the trial court.

*Hodge*, 248 Conn. at 228.

The respondent argues that I too should decline to hear this evidence on the theory that

Hodge's "disparate treatment claims" were denied on independent and adequate state procedural

grounds. Hodge counters that, although the Supreme Court denied this claim on procedural

grounds, those grounds were not "adequate" because, at the time of his trial, it was not clearly

established in Connecticut that an appeals court would only review those parts of the record

explicitly brought to the attention of the trial court.

In general, a district court will not consider a claim raised in a habeas petition if the

respondent shows that the state court decision disposing of that claim rested entirely on adequate

procedural grounds. *Cotto*, 331 F.3d at 238. A procedural bar is only "adequate" if "it is based

on a rule that is firmly established and regularly followed by the state in question." *Garcia v.*

*Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). In this case, I do not need to reach the issue whether the

procedural rule relied on by the Connecticut Supreme Court was "adequate," because I do not

think the Supreme Court used that rule to bar any of Hodge's *claims*.

With respect to each venireperson, Hodge's claim, to both the trial court and the

appellate courts, was that the prosecutor violated *Batson*. To succeed on this claim, Hodge had

to establish one fact – that the prosecutor was motivated by discriminatory intent. There were many ways he could have demonstrated the existence of that fact. For example, the Supreme Court of Connecticut has identified six factors that may indicate discriminatory intent:

> (1) The reasons given for the challenge were not related to the trial of the case; (2) the prosecutor failed to question the challenged juror or only questioned him or her in a perfunctory manner; (3) prospective jurors of one race were asked a question to elicit a particular response that was not asked of the other jurors; (4) persons with the same or similar characteristics but not the same race as the challenged juror were not struck; (5) the prosecutor advanced "an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically"; and (6) the prosecutor used a disproportionate number of peremptory challenges to exclude members of one race.

*Gonzalez*, 206 Conn. at 399 (internal citations omitted). These factors, however, are not "claims." They are only a number of possible ways that a defendant can demonstrate discriminatory intent. Accordingly, when the Connecticut Supreme Court declined to consider Hodge's evidence regarding similarly situated members of the venire, i.e., the fourth *Gonzales* factor, it was not denying a claim but rather declining to consider a certain type of evidence in support of a claim. The rule that the Court announced, therefore, was that it would not find error in a trial court's decision on the basis of evidence not put before the trial court when it made that decision. It was not, in other words, a rule barring a claim (to which the "independent and adequate" state procedural bar might apply); it was a rule barring consideration of certain evidence.

Moreover, I cannot see that the Connecticut Supreme Court's decision regarding what parts of the record it would review on appeal has any bearing on the present proceeding. Although I do not doubt the propriety of the Connecticut rule regarding what evidence an

-14-

appellate court will consider when reviewing a lower court's decision for error, a habeas petition

raises a very different type of question: whether the petitioner is "in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254; *Garcia v. Lewis*, 188

F.3d 71, 76 (2d Cir. 1999) ("a federal habeas court 'does not review a judgment, but the

lawfulness of the petitioner's custody *simpliciter*'") (citing *Coleman v. Thompson*, 501 U.S. 722,

730 (1991)). Consequently, procedural rules that apply to appellate review – such as a rule

barring the admission of evidence not presented directly to the trial court – may not be

appropriate in the habeas context. More to the point, the habeas statute, 28 U.S.C. § 2254,

contains no such limitation. When faced with a factual question, a district court is bound to give

deference to a state court's decision on that question. That presumption, however, can be

rebutted by clear and convincing evidence, and the only limitation that the statute places on *what*

evidence can be used to rebut the presumption is the limitation on which circumstances permit a

hearing. There is no indication in the statute that a district court is limited with respect to what

record evidence it may consider.[9] Thus, in deciding whether Hodge has shown discriminatory

intent by clear and convincing evidence, I will consider the entire factual record presented to me.

2.    *Evidence of Factual Error*

Having determined that the trial court applied the correct legal standard the only

---

[9] Nevertheless, when it comes to the question whether AEDPA permits relief – as opposed to the question whether there is a constitutional violation – there is a potentially significant limitation on what evidence the court may consider. In order for the court to find relief authorized by section 2254(d)(2), the court must conclude that the state court's decision was "based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." Were I to reach the question of relief in this case, that limitation might very well be relevant, but, because I do not reach that question, it is not. (That limitation would not apply, of course, if the court found that relief was authorized by section 2254(d)(1).)

-15-

remaining issue with respect to the determination whether Hodge's rights were violated is the question whether, considering the entire record, Hodge has demonstrated, by clear and convincing evidence, an error in the trial court's factual determination that none of the peremptory challenges in question was exercised as a result of discriminatory intent.

Before reviewing the facts pertaining to each venireperson, a general observation is appropriate. Hodge argues that, if he can present evidence that calls into question even one of the prosecutor's reasons for excusing a venireperson, he will have demonstrated racial discrimination by clear and convincing evidence, on the theory that he has shown "pretext." There are several problems with this argument. First, even were I reviewing this issue *de novo*, evidence rebutting a race-neutral reason does not mandate a finding of racial discrimination. Evidence that a race-neutral reason is not credible *allows* a fact finder to infer that the reason is a pretext for racial discrimination, but it does not *compel* that finding. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-16 (1993) (Holding in the Title VII context that "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original). Second, I am not conducting a *de novo* review; I am examining the record for "clear and convincing" evidence that the trial court's findings were erroneous. Consequently, to establish any fact, Hodge must do more than merely advance some evidence tending to establish that fact. Third, even clear and convincing evidence that one of the prosecutor's proffered reasons was not credible is not necessarily clear and convincing evidence that the prosecutor was motivated by discriminatory intent. There must be clear and convincing evidence not merely that the stated reason was false but that it was a pretext *for racial discrimination. See United States v. Alvarado*, 951 F.2d 22, 26

-16-

(2d Cir. 1991) ("In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent. The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubt raised by a questionable one."). It will be a rare case where evidence, even clear and convincing evidence, that rebuts one of a prosecutor's reasons constitutes clear and convincing evidence of racial discrimination when the prosecutor has given other, well supported reasons.

I now consider each venireperson in turn.

a.    Venireperson C.W.

The state gave four reasons for challenging C.W. a black woman: (1) her son and brother had been arrested and incarcerated; (2) her cousin was indicted for murder and she stated that she believed he was being unfairly prosecuted; (3) she made a statement indicating she would need to be "100% certain" before she could vote for conviction; and (4) she expressed concern about the defendant serving a jail sentence. Hodge argues that the record contains clear and convincing evidence that the first two reasons given were merely pretexts for racial discrimination. Specifically, Hodge points out that the prosecutor accepted other venirepersons who had been arrested or who had relatives who had been arrested.

The evidence in the record of the other venireperson's direct or indirect experiences with police is not clear and convincing evidence of the prosecutor's discriminatory intent. I cannot say from the record that C.W. did not appear more troubled by her police experiences than the other venirepersons were by their experiences. I also cannot say from the record that there were not attributes possessed by the other venirepersons that, in the prosecutor's view, outweighed

-17-

their potentially negative view of law enforcement.[10]  Moreover, even were I to assume that the prosecutor's treatment of those other individuals indicates that he was not really concerned about a negative perception of the police, that might mean nothing more than that the principal reason he challenged C.W. was either her failure to understand the burden of proof or the prosecutor's fears about her sympathy.  In other words, even if the evidence indicates that the prosecutor's first two reasons were relatively weak, that is a far cry from saying that such evidence makes a clear and convincing showing that those reasons were a pretext for racial discrimination.

> b.    Venireperson J.G.

The state gave four reasons for challenging J.G., a black woman: (1) her confusion with the burden of proof; (2) her eagerness to sit on the case; (3) she worked in the insurance business;[11] and (4) she knew two employees of the public defender's office.  The prosecutor also mentioned that J.G. was familiar with the area where the crime occurred.

Hodge argues that the prosecutor's discriminatory motive is evidenced by the fact that he accepted another venireperson with an insurance background and the fact that he accepted other venirepersons who had familiarity with the scene.  At best this is evidence that J.G.'s employment and familiarity with crime scene were not the prosecutor's primary reasons for exercising the challenge; the evidence is far from clear and convincing that the prosecutor's true motive was racial discrimination.

---

[10] In connection with this latter point, I note that it is Hodge's own fault that this part of the record is not more fully developed.  Had he raised this argument at the trial court – which he did not – then the prosecutor would likely have been forced to articulate his reasons for selecting those other members of the venire.

[11] The two victims of the crime for which Hodge was charged were insurance adjusters.

-18-

c.     Venireperson I.M.

The prosecutor gave three reasons for challenging I.M., a black woman: (1) concern that she would not understand psychiatric testimony, based on her responses to questions and her level of education; (2) Dr. Griffith, a defense psychiatric witness, headed a clinic where I.M.'s son was an in-patient; and (3) some of her statements indicated a belief that someone with a psychiatric illness might not be accountable for his actions.

Hodge argues that the prosecutor's concern that I.M. would not understand psychiatric testimony is (a) not supported by her answers to voir dire questions and (b) belied by the prosecutor's choice of other individuals with similar educational backgrounds. With respect to the first point, at best Hodge is drawing one permissible inference from I.M.'s answers, but that does not satisfy the "clear and convincing" standard. Additionally, the trial judge explicitly noted that he, too, thought I.M. seemed confused by a number of questions. With respect to the second point, the existence of other individuals with similar educational backgrounds is not clear and convincing evidence of pretext, given that those individuals' other characteristics may have made them more desirable to the prosecution. Additionally, it is clear from the record that the prosecution was not relying solely on I.M.'s educational background, but a combination of her educational background and her confused responses to voir dire questions.

Hodge argues that the record shows that the prosecution's reliance on I.M.'s connection with Dr. Griffith's facility was pretextual. Specifically, Hodge points to the selection of other venirepersons who had associations with that facility. There are several problems with this argument. First, without observing I.M.'s demeanor (something the prosecutor and trial judge did observe), it is difficult to gauge how favorably she described her experience with Dr.

-19-

Griffith's institution. Second, I.M. did more than just acknowledge an association with Dr. Griffith; she acknowledged that she would "look kindly on him, and think he was a pretty good person." Third, even if I read the evidence in Hodge's favor, there is at most clear and convincing evidence that the prosecutor did not rely *only* on this reason; there is not clear and convincing evidence that this reason was a pretext for racial discrimination.

Hodge argues that the prosecutor's statements regarding I.M.'s sympathy for people with psychiatric illness are inconsistent with the prosecutor's selection of other individuals with relatives with a history of psychiatric illness. The prosecutor's concern with I.M., however, was more than just her experience with a relative's illness. The prosecutor was concerned specifically with the chance that she might believe people with mental illness were not accountable for their actions. For example, I.M. responded affirmatively to the question "So you must feel that people who do have mental problems aren't – shouldn't be held accountable for their conduct based on your experience with your son?" The record does not contain clear and convincing evidence that the prosecutor's concern was unfounded.

> d.    Venireperson M.F.

The state gave three reasons for challenging M.F., a black man: (1) his multiple arrests and experiences with the court system; (2) his evasiveness in answering questions regarding burden of proof, his experience with police officers, and his previous involvement with drugs, gambling, and alcohol; (3) statements indicating his religious beliefs might conflict with his ability to apply the law as a juror. The prosecutor also noted M.F.'s connection with a mental health facility associated with Dr. Griffith and that he knew victims of homicide and individuals sentenced to life imprisonment.

Hodge argues that the prosecutor's concern with M.F.'s arrest history is pretextual because the prosecutor accepted other individuals with arrest records. The fact that the prosecutor accepted other people with arrest records is not clear and convincing evidence that the prosecutor was not concerned by M.F.'s *multiple* arrests or by M.F.'s specific reactions to questions about his experience with the police.

Hodge argues that the prosecutor's detailed questioning of M.F. about his religious beliefs, and his ignoring adequate answers to those questions, indicate that the prosecutor was searching for a pretextual reason to disqualify M.F.[12] The record does not, to say the least, contain "clear and convincing" evidence in support of such an inference. The record indicates that M.F. was somewhat vague about how he would respond if he felt his religion conflicted with the applicable law. At one point he indicated he would have to consult his religious leader for advice on how to deal with such a conflict. Those responses certainly warranted further questioning by the prosecutor and are also strong evidence that the prosecutor's challenge was motivated by a legitimate concern.

Hodge argues that M.F.'s relationship to Dr. Griffith was attenuated and that his acquaintance with murder victims and incarcerated individuals had little relevance to his suitability as a juror. I accept both points, but, in light of the very strong additional reasons given by the prosecutor, that evidence does not make a clear and convincing showing that the

---

[12] Hodge does not appear to pursue the claim he made in state court that the prosecutor's challenge to M.F. was motivated by religious discrimination. It is just as well. Although both the Connecticut Supreme Court, *see Hodge*, 248 Conn. at 245, and the Second Circuit, *United States v. Brown*, 352 F.3d 654, 668 (2d Cir. 2003), have held that *Batson* applies to challenges based on religious affiliation, it is difficult to see how a violation of that rule could be grounds for habeas relief because the United States Supreme Court has yet to pass on the issue. *See* 28 U.S.C. § 2254(d)(1).

prosecutor was motivated by racially discriminatory intent. Rather it indicates that those factors were not particularly important concerns to the prosecutor. This conclusion is further supported by the fact that those reasons were mentioned only briefly by the prosecutor and not given as his principal reasons for exercising a challenge.

e.      Venireperson G.D.

The state challenged G.D., a Hispanic man, principally on the ground that it was concerned with his ability to understand psychiatric evidence. The state also noted (a) his negative experience with police, (b) his acquaintance with a murderer and the murderer's victim, and (c) his being the second youngest in a family of seven.

Hodge argues that the record is clear that the prosecutor was not concerned with G.D.'s ability to understand the evidence that would be presented at trial. Hodge argues that G.D. gave adequate answers to the prosecutor's questions and that the prosecutor selected other venirepersons with similar educational backgrounds. Hodge shoulders a particularly difficult burden in attempting to show that the G.D.'s responses to the voir dire questions were adequate. A transcript does not provide a good basis from which to judge how well a venireperson understood questions posed, how quickly he responded, or how articulate were those responses. The transcript of G.D.'s voir dire is no exception. After reviewing it, I cannot say that the prosecutor had no cause to be concerned about G.D's ability to comprehend psychiatric evidence.

The fact that the prosecutor selected other individuals with similar educational backgrounds is not very illuminating. I am not in a position to judge how well those people appeared to understand the proceedings at voir dire (though the trial judge was), and I cannot say that those individuals did not possess other characteristics that made them desirable to the

-22-

prosecution.[13]

Hodge argues that the prosecutor's selection of other venirepersons with negative police experience demonstrates that this reason was a pretext for challenging G.D. on the basis of his race. As I have noted before, the fact that other venirepersons with one similar characteristic were selected does not meet Hodge's burden of presenting "clear and convincing" evidence of discrimination. He has not demonstrated that those other venirepersons had the *same* negative reaction to the police or that those venirepersons' other characteristics did not make them desirable to the prosecution.

Finally, I acknowledge that G.D.'s association with a murder victim and his position among his siblings appear to bear little on his suitability to sit on Hodge's jury. Nevertheless, in light of the fact that at jury selection Hodge never asked the judge to require the prosecutor to explain the relevance of those two reasons, I cannot say that there is clear and convincing evidence that those reasons were pretexts for racial discrimination.

f.    Venireperson B.A.

The state gave the following reasons for challenging B.A., a black woman: (1) she had two brothers with significant criminal histories; (2) she had been arrested and believed herself unfairly treated by the police; (3) she had received psychiatric treatment at the facility run by Dr. Griffith; (4) her psychiatric history, work history, and educational background indicated she might have difficulty understanding psychiatric evidence; and (5) she had indicated she might not be able to ignore publicity related to the case.

---

[13] For example, the one venireperson whose similar educational background was brought up at jury selection was significantly older than G.D., had run his own business, and had raised two children.

-23-

Hodge's arguments that the prosecutor challenged B.A. because of her race are similar to those made with respect to other venirepersons. He argues that: (a) the state accepted other people with criminal histories or whose family members had such histories; (b) the state accepted other people who had associations with Dr. Griffith's facility; (c) the state accepted other people with similar educational backgrounds to B.A.'s; and (d) B.A.'s answers at voir dire indicate she could understand psychiatric evidence and would be able to ignore the publicity surrounding the case.

Hodge's arguments suffer from the flaws already discussed, and there is no need to repeat those problems in detail. The fact that other venirepersons shared some similar characteristics with B.A. is not clear and convincing evidence that B.A.'s particular expression of those characteristics or the confluence of several of those characteristics in B.A. did not cause the prosecutor to find her more worthy of the exercise of a challenge. Additionally, Hodge has not offered clear and convincing evidence that the other venirepersons who were not challenged were not otherwise desirable to the prosecution.[14]  Finally, though the record may permit the inferences Hodge draws from B.A.'s response to the voir dire questions, it does not provide clear and convincing evidence that a contrary inference would be error.

### Conclusion

In examining each of Hodge's *Batson* claims the trial court asked whether or not race was

---

[14] Hodge argues that the prosecution's failure to ask certain venirepersons questions concerning their prior experiences with the police demonstrates that those questions, when asked of B.A., were merely attempts to disguise racial motivation. This is, at best, weak evidence of racial motivation, and certainly not clear and convincing evidence. For example, it is possible that the other venirepersons' desirable characteristics made the prosecutor indifferent to their past contact with police. More generally, the Fourteenth Amendment does not require a prosecutor to conduct voir dire by mechanical recitation of a standard set of questions.

-24-

a motivating factor in the prosecution's exercise of the peremptory challenge. That was the appropriate legal standard. With respect to each challenge, the trial court found that race was not a motivating factor. The record does not contain clear and convincing evidence that this factual finding was in error.

Because the trial court committed no legal error and because there is insufficient evidence of any error in its factual findings, I conclude that Hodge has not demonstrated that he is in state custody in violation of the Fourteenth Amendment.[15] Because Hodge has not demonstrated a constitutional violation, there is no need to reach the question whether relief is authorized by 28 U.S.C. § 2254(d). Finally, because Hodge has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253, I will not issue a certificate of appealability.

---

[15] Hodge also argues that the Connecticut Supreme Court applied the wrong standard in affirming the trial court. Because I conclude that the trial court applied the correct standard, it does not matter for the purposes of this habeas petition whether the Connecticut Supreme Court affirmed for erroneous reasons. Nevertheless, I see no error in the Connecticut Supreme Court's decision. Hodge's argument is that the Supreme Court required him to prove that race was the sole factor motivating the prosecutor's challenges. It did not. The most that could be said about the Court's decision is that it refused to find *clear error* in the trial court's factual findings once the Supreme Court found that some of the prosecutor's reasons were not pretextual. In other words, the Supreme Court concluded that, because it is possible that the trial court found "that the sound explanations dispel the doubt raised by a questionable one," *Alvardo*, 951 F.2d at 26, mere proof of the existence of those questionable explanations was insufficient to demonstrate clear error. That conclusion is consistent with federal law.

The petition (doc. # 1) is DENIED.  The clerk shall close the file.


It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of April 2005.

_/s/ Stefan R. Underhill_
Stefan R. Underhill
United States District Judge
